

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00079-CV

_____


MONDEE STRACENER, Appellant

V.

DOUG STRACENER, BERNICE L. STRACENER AND
JOEY KEITH STRACENER, Appellees


On Appeal from the 115th District Court
Upshur County, Texas
Trial Court No. 135-06


Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

MEMORANDUM OPINION

On February 21, 2006, Mondee Stracener filed suit against his siblings, Doug, Bernice L., and Joey Keith, seeking partition of real property in Upshur County, Texas, which they jointly owned. On appeal, Mondee argues, among other things, that the trial court abused its discretion when it adopted the commissioners' amended report regarding the partition of the property and entered its final decree in conformity with that report. For the reasons stated below, we affirm the trial court's decision.

## I.      Background

The tract in question consists of 54.883 acres. Included on that tract is a single-family residence. The trial court entered an amended decree ordering partition and appointing commissioners (First Amended Decree).[1] In its First Amended Decree, the trial court directed the commissioners to partition the property as follows: 68.75 percent of the entire tract allocated to Mondee, 15.625 percent of the entire tract allocated to Doug, and 15.625 percent of the entire tract allocated to Bernice L. Mondee appealed the first amended decree to the Twelfth Court of Appeals in Tyler,[2] and the First Amended Decree was affirmed in an unpublished opinion. *Stracener v. Stracener*, No. 12-10-00270-CV, 2011 WL 2766802 (Tex. App.—Tyler July 13, 2011, no pet.).

---

[1]The trial court's original decree ordering partition and appointing commissioners was filed on June 22, 2010, and is not the subject of this appeal.

[2]Upshur County is located within the appellate districts for both the Twelfth Court of Appeals and this Court, and an appellant may elect to appeal a judgment from the Upshur County courts to either appellate court. *See* TEX. GOVT. CODE ANN. § 22.201(g) (West Supp. 2014); *Ex parte Dillard*, 577 S.W.2d 519, 522 (Tex. App.—Texarkana 1979, no writ).

The Twelfth Court of Appeals then remanded the case to the trial court for further proceedings.[3] The commissioners filed an amended report proposing a division of the property with 68.75 percent of the entire tract going to Mondee, 15.625 percent of the entire tract going to Doug, and 15.625 percent of the entire tract going to Bernice L. After hearing Mondee's objections to the amended report, the trial court then entered its final decree partitioning the property as found by the commissioners (Final Decree). Mondee filed this appeal, asserting that the trial court erred by entering a final decree that contradicted the First Amended Decree.

Essentially, Mondee claims in this appeal that by virtue of the First Amended Decree, he was to receive the house and one acre, and then he was to receive 68.75 percent of the surface tract remaining after the house and one acre were carved out. Doug and Bernice L. assert that by virtue of the First Amended Decree, Mondee was to receive 68.75 percent of the entire tract, with the portion allocated to Mondee to include the house and one acre. Therefore, Doug and Bernice L. argue that the trial court's Final Decree complies with the First Amended Decree. For the reasons stated below, we agree with Doug and Bernice L. and affirm the trial court's Final Decree.[4]

---

[3]The partition stipulated "that Joey [Keith] would receive a one acre tract of land and renounce any claim to any other portion of the real property to be partitioned." *Stracener*, 2011 WL 2766802, at n.1. Therefore, Joey Keith is not a party to this appeal.

[4]For simplification, this opinion refers to the partitioned interests as a percentage of the entire tract. Yet, in reality, the parties did not receive 68.75 percent and 31.25 percent of 54.883 acres. Rather, the commissioners determined the value of the entire tract with the improvements. Once the value of the entire tract was determined, the commissioners then determined how many acres of the entire tract constituted 68.75 percent of the value of the entire tract. The commissioners then identified a sub-tract to be awarded to Mondee containing an amount of acreage equal in value to 68.75 percent of the value of the entire tract and awarded Doug and Bernice L. each a sub-tract containing an amount of acreage equal in value to 15.625 percent of the entire tract. This calculation was necessary to account for the fact that the acreage was not homogeneous.

3

## II.     Standard of Review

In cases such as this one, where the parties seek equitable relief, the trial court exercises broad discretion in balancing the equities. *Edwards v. Mid–Continent Office Distribs.*, *L.P.*, 252 S.W.3d 833, 836 (Tex. App.—Dallas 2008, pet. denied). The finder of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 557 (Tex. App.—Tyler 2007, pet. denied). Here, the parties consented to a non-jury trial. In a non-jury trial, when a court makes no separate findings of fact and conclusions of law,[5] the appellate court must assume that the trial court made all findings in support of its judgment. *Sixth RMA Partners*, *L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003). We will not disturb a trial court's ruling on a claim seeking equitable relief unless it is arbitrary, unreasonable, and unsupported by guiding rules and principles. *Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex. 2004).

## III.     Analysis

Mondee appeals the trial court's July 11, 2014, Final Decree. A judicial partition involves a two-step process, and each step results in an appealable order. *Snow v. Donelson*, 242 S.W.3d 570, 572 (Tex. App.—Waco 2007, no pet.); *Woodland v. Wisdom*, 975 S.W.2d 712, 714 (Tex. App.—Texarkana 1998, no pet.). In the first step, the trial court (1) determines "the share or interest of each of the joint owners or claimants in the real estate sought to be divided, and all questions of law or equity affecting the title to such land," TEX. R. CIV. P. 760; (2) decides whether

---

[5]The parties requested findings of fact and conclusions of law from the trial court; however, the trial court did not respond.

the "property is susceptible of partition," TEX. R. CIV. P. 761; and (3) appoints three commissioners to partition the property "in accordance with the respective shares or interests of each of such parties entitled thereto," *see* TEX. R. CIV. P. 760, 761; *Snow*, 242 S.W.3d at 572.

Next, the appointed commissioners make the actual division of property in accordance with the court's decree. *Id.* at 572. The second step of the partition process or suit begins when the commissioners file a written report under oath describing, *inter alia*, the property division, the number of shares and the land which constitutes each share, and the estimated value of each share. TEX. R. CIV. P. 769. In the second partition decree, the trial court either approves the commissioners' lack of a written report and partitions the property accordingly, or rejects the report and appoints new commissioners to partition the land if it finds the existing report to be erroneous in any material respect, or unjust and unequal. *Snow*, 242 S.W.3d at 572. Untimely challenges to the commissioners' conformity with the Texas Rules of Civil Procedure are waived. *Id.* at 573. Since the two-step partition process yields two appealable orders, Texas courts have uniformly held that issues decided in the first hearing cannot be challenged on appeal from the trial court's second order adopting the commissioners' report and partitioning the property. *Id.* (citing *Campbell v. Tufts*, 3 S.W.3d 256, 259 (Tex. App.—Waco 1999, no pet.).[6]

In appealing the trial court's Final Decree, Mondee contends that the trial court erred (1) when it advised the commissioners to consider the value of the house, which was specifically set aside to him, (2) when it failed to instruct the commissioners to exclude the value of the house

---

[6]The first phase in this case became final when the Twelfth Court of Appeals affirmed the First Amended Decree. Thus, Mondee cannot complain here that the commissioners' amended report fails to comply with the parties' stipulation, only that it fails to comply with the First Amended Decree.

from consideration in amending their report, and (3) when it adopted the commissioners' report in its entirety and issued a final partition decree in conformity with that report. While Mondee submits three separate points of error, he essentially complains that the commissioners should have excluded the house and the one acre upon which it sits from the entire tract before applying the stipulated percentages. In other words, he believes that instead of receiving 68.75 percent of the entire tract, he should have received the house and one acre and then received 68.75 percent of everything remaining after the house and one acre were carved out.

The parties are in agreement that the house at issue and the acre upon which it is situated belong to Mondee as his sole property. However, Mondee contends that, by instructing the commissioners to include the house and one acre in the 68.75 percent portion allocated to him, the trial court effectively changed its First Amended Decree. Because the First Amended Decree was a final order, Mondee contends the trial court was without authority to do so.

In support of his argument, Mondee points to the trial court's First Amended Decree, which ordered "that the above-described single family dwelling and [one] acre on which the house rests [are] awarded to Mondee Stracener, Plaintiff, and that, in addition, his share of the real property is set aside to include such improvements." Mondee emphasizes the phrase "in addition" and argues that "in addition" means "also, added to, not a part of." Mondee also contends that the trial court's description of the house and one acre as his "sole property" is contrary to a finding of jointly owned property and vested title solely in him rather than jointly in him and his siblings, subject to partition. Mondee believes there would be no need for the inclusion of these terms in the First

Amended Decree if the trial court intended the house and the one acre to be considered as a part of his 68.75 percent share.

Nevertheless, Mondee overlooks other language in the First Amended Decree which supports the trial court's Final Decree. Specifically, the First Amended Decree states:

> That the single-family dwelling and 1 acre is ORDERED Mondee Stracener's sole property in his own right, and that upon partition of the property he is entitled to have set aside *as part of his 68.75% interest* that portion of the property upon which the home is situated.
>
> IT IS THEREFORE ORDERED that the foregoing property is partitioned between the above-named parties such that the value of the parcels allotted to each party reflects that party's interests as recited above, and that the above-described single family dwelling and [one] acre on which the house rests is awarded to Mondee Stracener, Plaintiff, and that, in addition, *his share of the real property is set aside to include such improvements*.

(Emphasis added.) The clear language of the First Amended Decree states that the house and one acre were to be included as part of Mondee's 68.75 percent interest in the total real estate. The Final Decree accomplishes this division. Consequently, the Final Decree is consistent with the First Amended Decree.

Mondee also notes that he used his separate funds to reconstruct the house due to damage sustained from a fire and that, therefore, he made improvements to the house without monetary contributions from his siblings. As a result, Mondee asserts that the trial court lacked authority to include the house and one acre in the valuation prior to application of the percentages. In support of his argument, Mondee points to *Price v. Price*, which involves a similar set of facts as we have here. In *Price*, the court stated that (1) when a house is situated on land owned by two or more co-owners and the house is destroyed by fire, the money arising from an insurance policy stands in

7

the place of the house[7] and (2) where improvements have been made upon the property to be partitioned, the improved portion will be allotted to the party who made the improvements if it can be so allotted without prejudice to the other owners. *Price v. Price*, 394 S.W.2d 855, 858 (Tex. Civ. App.—Tyler 1965, writ ref'd n.r.e.).

Yet, we have held here that the Final Decree complies with the First Amended Decree. Thus, the Commissioners decision to include the house and one acre in the valuation prior to application of the percentages complies with the First Amended Decree. Accordingly, this argument challenges the trial court's authority to enter the First Amended Decree, not the Final Decree. Because the First Amended Decree became final on November 9, 2011, when the clerk of the Twelfth Court of Appeals issued a mandate in accordance with that Court's judgment, Mondee is foreclosed from raising the argument here. *See Snow*, 242 S.W.3d at 572.

The trial court's instructions to the commissioners and its Final Decree did not vary the terms of the First Amended Decree. The trial court found the commissioners' second report regarding the division of property to be fair and equitable and, thereafter, issued its Final Decree in conformity with that report. We cannot find that the trial court's ruling was arbitrary, unreasonable, or unsupported by guiding rules and principles. Mondee's points of error are overruled.

---

[7]The parties stipulated to, and the trial court ordered in its First Amended Decree, that Mondee would receive $19,937.50 "from the insurance proceeds received as a result of the house located on the property at issue in this case." We assume the trial court is referring to the insurance proceeds from the fire.

## IV. Conclusion

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:     May 11, 2015
Date Decided:       July 24, 2015